UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:16-cv-23170-MORENO/TURNOFF

ELLIOT GELBER,
and all others similarly situated,

    Plaintiffs,

vs.

AKAL SECURITY, INC.,

    Defendant.
                                 /

**REPORT AND RECOMMENDATION**

**THIS CAUSE** came before the Court upon the parties' cross-motions for summary judgment. (ECF No. 116, 119). This case was referred to the undersigned by the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida. (ECF No. 131). A hearing on this motion was held on June 27, 2017. (ECF No. 149). The Court has considered the written and oral arguments, the case file, the applicable law, and is otherwise duly advised in the premises.

**Factual Background**

On July 21, 2016, Plaintiffs[1] filed a three-count complaint against Defendant Akal Security, Inc., pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), for failure to pay minimum and overtime wages. (ECF No. 1). Defendant is a government contractor that oversees

---

[1] There are fifteen (15) Plaintiffs: Elliot Gelber, Angel Lopez, Luis Pagan, Monica Vila, Sigfredo Hernandez, Lazero Modera, Sylvia Batista, Fara Diaz, Jean Valbrun, Cassandra Baker, Magalie Santiago, Sandra Ameneiro, Jorge Aguilar, Carlos Tolentino, and Ruben Yero.

deportation of persons unlawfully in the United States. Plaintiffs are employed by Defendant as Air Security Officers ("ASOs"), responsible for directly supervising deportees from their arrival at Defendant's facilities, and throughout their trip to the deportees' home country.

Plaintiffs allege that Defendant had a company-wide policy of arbitrarily deducting one hour of pay for a "meal break" on each return flight to the United States that was longer than 90 minutes, where no deportees were onboard. Plaintiffs further contend that the ASOs did not, in fact, take these meal breaks, thus entitling them to minimum wages and overtime wages for the respective hours worked during this time. In response, Defendant argues that, because Plaintiffs were completely relieved from duty for one hour during applicable flights, these breaks constitute non-compensable, bona fide meal periods under the FLSA.

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) mandates that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct. at 2552. In determining whether summary judgment is proper, the court should make all reasonable inferences of fact in favor of the nonmoving party. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998); Hazen v. Home Depot USA, Inc., No. 09-14120-CIV, 2009 WL 4927561, at *2 (S.D. Fla. Dec. 21, 2009).

"An issue of fact is 'material' if it is a legal element of the claim under the substantive law which might affect the outcome of the case." Chao v. Tyson Foods, Inc., 568 F. Supp 2d 1300, 1304 (N.D. Ala. 2011) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1966)). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id.

## Applicable Law

The FLSA requires that employees be compensated for all hours worked. The term 'hours worked' includes:

> (a) all time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so. Thus, working time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness.

29 C.F.R.§ 778.223. Work performed while traveling is included in the calculation of "hours worked," and must be compensated, except during bona fide meal periods. 20 C.F.R. § 785.41.

In the Eleventh Circuit, the standard for determining whether a break constitutes a bona fide meal period is delineated in Kohlheim v. Glynn County, 915 F.2d 1473 (11th Cir. 1990), where the court expressly adopted 29 C.F.R. § 785.19 as law:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals.

29 C.F.R. § 785.19. The regulation further clarifies that "[i]t is not necessary that the employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period." Id. "Completely relieved from duties" means that employees are not "required to perform any duties, whether active or inactive, while eating." Kohlheim, 915 F.2d at 1477. Moreover, what matters in meal period cases is whether the employees "are subject to real limitations on their personal freedom during mealtime which inure to the benefit of [their employer]." Id.

The employee bears the burden of proving that he was not properly compensated for work which he performed; however, "the remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making that burden an impossible hurdle." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946). For example, because it is the employer's duty to maintain records of wages, hours, and other conditions and practices of employment, the employee should not be penalized if the employer's records are improper. Id. Accordingly, in the absence of precise records, the employee will meet his burden if he "proves that he has in fact performed work for which he was improperly compensated and he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. At that point, the burden shifts to the employer to produce evidence of the "precise amount of work performed" or to negate "the reasonableness of the inference to be drawn from the employee's evidence." Id. In sum, the burden lies with the employee, but, if the employer fails to keep proper records, the burden is relaxed. Id.

At issue in the parties' cross-motions for summary judgment is whether Defendant's meal period policy constitutes a bona fide meal period within the meaning of the FLSA. If the policy meets the requirements for a bona fide meal period, the time is non-compensable; if not, Plaintiffs must be compensated for the compulsory one-hour breaks.

## Discussion

**Parties' Cross Motions for Summary Judgment**

*1. Burden of Proof*

The first issue in the parties' respective motions is the burden of proof. Plaintiffs argue that they face a relaxed burden, which they have met, because Defendant failed to keep accurate records. Thus, Plaintiffs argue that, pursuant to the Anderson burden-shifting framework, Defendant is now

charged with proving that the time is not compensable. 328 U.S. at 687. In response, Defendant contends that its records are accurate, so the burden is not relaxed, and Plaintiffs fail to meet same. The extent of Plaintiffs' initial burden turns on the accuracy of Defendant's records. If, as Defendant argues, the records meet the FLSA requirements, Plaintiffs bear a higher burden. Id. If not, Plaintiffs' burden is relaxed. Id.

Because an employer "is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed," the employer is charged with maintaining records of the employee's "wages, hours, and other conditions and practices of employment." Jarmon v. Vinson Guard Services, Inc., No.: 2:08-CV-2106-VEH, 2010 WL 11507029, at *8 (N.D. Ala. Jul. 13, 2010) (citing Anderson, 328 U.S. 680 (1946)). "The records must be 'precise' regarding the hours the employee worked and the amount of compensation paid for each workweek." Id. (quoting Olson v. Superior Pontiac-GMC, Inc., 776 F.2d 265, 266 (11th Cir.1985)); see also, Wirtz v. Williams, 369 F.2d 783, 785 (5th Cir. 1966) (finding inadequate records where "[n]o record was made of the [employee's] starting time, quitting time, or actual hours worked.").

In determining Plaintiffs' burden, an employer's records are inaccurate where "it has failed to keep records," or where it has maintained records, but these cannot be trusted. Murray v. Birmingham Board of Education, 172 F. Supp.3d 1225, 1237 (N.D. Ala. 2016). By way of example, the employees in Murray signed a monthly time-sheet, which contained the words, "I agree this accurately reflects my time and I have not been requested to falsify this timesheet." Id. at 1242. Despite this statement, the employees testified that the time-sheet "was not an accurate reflection of the time actually worked, either because they worked 'off-the-clock' or because the scanned times had received edits." Id. Moreover, they asserted that "they signed their timesheets because they

understood that signing them was the only way that they would receive their pay." Id.

Here, Defendant argues that its records are proper because they accurately reflect deductions from flights that meet its meal break policy criteria. In this connection, Defendant maintains that it is not necessary to record the exact start and end times of the meal breaks, so long as deductions are accurately made and recorded in comportment with its policy. The undersigned disagrees and finds the case at hand similar to Murray because Defendant's records cannot be trusted. See 172 F. Supp.3d at 1237. Like the employees in Murray, Plaintiffs here dispute the accuracy of the time-sheets, claiming that they worked an additional hour–the meal period–which is not recorded. See Id. In this connection, at the end of each shift, Plaintiffs signed their blank time sheets and submitted them to Defendant. Then, in direct contravention of its written policy, Defendant's Lead ASO (rather than Plaintiffs, themselves) edited the time sheets by inserting an hour-long meal period. However, Defendant failed altogether to keep track of the actual existence of meal breaks: its only evidence of the breaks are its written policy and the "administrative placeholders" it inserts after a shift is over. Without evidence that Plaintiffs were actually entitled to these breaks, such as records of Plaintiffs being released from their duties for the relevant time or other reliable records demonstrating the actual existence of the meal breaks, the undersigned concludes that Defendant's record-keeping is inadequate. Thus, Plaintiffs' burden of proof is "greatly reduced" and can be met "through deposition testimony, affidavit, or declaration." See Jarmon, 2010 WL 11507029, at *10; see also Anderson, 328 U.S. at 687-88.

*2. Compensability of the Meal Breaks*

Next, the parties address the compensability of the one-hour meal periods deducted from Plaintiffs' pay. Plaintiffs moved for summary judgment on liability, contending that they are entitled

to compensation for the meal periods because Defendant failed to maintain accurate records and because the ASOs are not completely relieved from duty for the purpose of eating a regularly-scheduled meal. Defendant also moved for summary judgment, arguing that the meal periods are not compensable as a matter of law because they meet the FLSA requirements to constitute a bona fide meal period.

In applying the Kohlheim standard, "the court must examine whether the [break at issue] is allotted for the purpose of eating a regularly scheduled meal, whether Defendant's employees retain significant affirmative responsibilities, and whether the employees are subject to real limitations on their freedom during the break which inure to Defendant's benefit." Chao, 568 F. Supp. 2d at 1300 (quoting Kohlheim, 915 F.2d at 1477) (internal quotations omitted).

An employee is completely relieved from duty when he is not subject to "significant affirmative responsibilities" during the meal period. Kohlheim, 915 F.2d at 1477. In this connection, "the essential consideration" is whether Plaintiffs remain subject to "real limitations on their freedom . . . which inure to the benefit of [Defendant]." Id. In Kohlheim, for example, the Court found no bona fide meal break because the employees were required to remain at the fire station, were subject to emergency calls, and retained other "significant affirmative responsibilities" during their breaks. Id. These responsibilities benefitted the employer in that they ensured "an available pool of competent firefighters for immediate response to emergency situations." Id. Likewise, in Beck v. Nephron Corporation, the Court found in favor of the employee, a nurse, because she was required to remain on the premises and available to patients' needs while on break. No. 1:13-CV-3408-MHS, 2014 WL 12572930 (Dec. 29, 2014). These limitations benefitted the employer by allowing it to comply with federal and state regulations. Id. (citing 42 C.F.R. § 494.180(b)(2)). By contrast, in

Jarmon, the court denied the parties' cross-motions for summary judgment, given the following evidence:

> Mr. Jarmon has presented evidence that, if believed, demonstrates that he either worked or was on-call for the entirety of several 24-hour shifts but that [the employer] always deducted 10 hours for a "lunch" period. [The employer] has presented evidence, mostly through [] deposition testimony [], that Mr. Jarmon only worked for a maximum of 14 hour shifts and that he was on-call for the remainder of the time. There is also conflicting evidence regarding Mr. Jarmon's duties while on-call.

2010 WL 11507029, at *10.

With respect to the "on-call" time, the court noted that it "is generally compensable if the employee 'is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes." Jarmon, 2010 WL 11507029, at *10 n.13. However, such time is not compensable where the employee is not required to remain on the premises, but "merely has to be reachable by his employer and ready to return to duty if needed." Id. In evaluating the present case, the undersigned notes that "[i]t is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist." Birdwell v. City of Gadsden, Ala., 970 F.2d 807, 808 (11th Cir. 1992).

*a. Are Plaintiffs completely relieved from duties for the duration of the breaks?*

Here, Plaintiffs claim that they suffer extensive limitations which inure to Defendant's benefit because their presence on the plane, itself, is a job duty from which they cannot be relieved. Defendant, by contrast, argues that Plaintiffs must spend the meal period "disengage[d] from work duties," as the policy directs, and that Plaintiffs "engag[e] in personal pursuits that inure to their own benefit and comfort: sleeping, reading, watching movies, and playing video games." According to Defendant, these activities render the meal periods non-compensable.

Based on the testimony of several Plaintiffs, Plaintiffs admittedly spend much of their time during empty return flights "engaging in personal pursuits":

> Q: So on the return flight back to the United States with no detainees onboard, are the ASOs free to spend the entire flight as they wish subject to FAA rules?
> A: Yes.

(Baker Dep. 32: 6-10).

> Q: Okay. So while you are in flight without the detainees onboard, if I'm understanding you correctly, there are no duties that you have to perform; is that correct?
>
> A: I mean, unless Mr. Pagan wants you to write something for him, you know, write a memo for him, you know, something like that, of that nature, you know. Basically, you just sit back and you ride back.
>
> Q: Okay. So how often would Mr. Pagan ask you to write a memo or something?
>
> A: Not very often. Once in a blue moon. Maybe he needs for you to take care of something or write something for him or whatever.

(Lopez Dep. 24:5-17).

> Q: If no detainees travel back to Miami on the return flight from the home country, are there any duties for the air security officers to perform between when the last detainee is accepted by the home country and the plane lands back in Miami?
>
> A: Whoever is doing property has to make sure that all the paperwork is correct for the end of the mission. Whoever sat in the middle of the plane – the position is called middle-middle – has to make sure that the supply bag is put away, every supply is put in the bag and put away. Whoever is doing–whoever is doing the middle search is in charge of the human restraint device.

(L. Pagan Dep. 37:22-38:12). Pagan further testified that he had not been assigned to complete paperwork and could not estimate how long it would take, (L. Pagan Dep. 40:13-22), but that each of the other two tasks could be completed in five to ten minutes, (L. Pagan Dep. 39:21-23; 40:4-10). Based upon this testimony, the undersigned finds that the employees in Kohlheim and Beck are

distinguishable from the instant Plaintiffs, who appear not to perform extensive tasks during the meal breaks at issue. Thus, the relevant question is whether the Plaintiffs' presence on the plane, in and of itself, satisfies the Kohlheim standard. 915 F.2d 1473. In other words, do Plaintiffs suffer real limitations to their freedom, which inure to Defendant's benefit, as a result of their required presence on the plane? See Id.

In this regard, it is undisputed that Plaintiffs suffer real limitations: as Plaintiffs explain, "[t]hey cannot leave the aircraft, stop at home, pick up or drop off laundry, go to the bank, go to the pharmacy, . . . run personal errands, order food or even play cards. . . . [They are] 'held captive on the plane.'" (ECF No. 119). Defendant does not dispute these facts, (ECF No. 127), but argues that it realizes no benefit from them.

The undersigned finds this situation is similar to that in Jarmon, where the parties presented conflicting evidence that amounts to genuine issues of material fact regarding Plaintiffs' duties, and whether Defendant benefits from same. See 2010 WL 11507029, at *10. Notably, here, Defendant does not directly impose the restriction on Plaintiffs' movement via a company policy. Rather, it requires, as part of Plaintiffs' job, that they return to the United States aboard the aircraft. In other words, their confinement to the plane is an indirect consequence of the performance of a job requirement. (Def.'s SOF ¶ 8, ECF No. 127). In this connection, Plaintiff Gelber testified that, on the return flight, "[Plaintiffs] are not free to do what [they] want, because [they're] still on the mission." (Gelber Dep. 118:20-21). He further explained:

> Q: In what regard are you not free to do what you want?
>
> A: We can't leave the plane. We can't stay in the country and say, We'll come back on our return flight ourselves. We're still in uniform. We still have to obey all Akal policies.

(Gelber Dep. 118:22-119:3). Moreover, Gelber testified that the Lead ASO, Manuel Pagan, expressly forbade Plaintiffs from changing out of their uniforms on return flights with no detainees onboard, because they are "still on duty." (Gelber Dep. 150:16-24). The undersigned further notes that Plaintiffs contend the plane on which they are required to travel is unsanitary, "because the deportees routinely defecate, urinate, and vomit in their seats." (Pls.' SOF ¶ 44, ECF No. 120). The planes are not cleaned until after the return flight, so the meal breaks at issue would take place on the plane in this condition.

Defendant, on the other hand, maintains that it does not realize any benefit from Plaintiffs' presence on the return flight, where they undisputedly spend the majority of their time engaged in personal pursuits (notwithstanding their limitations). Given the testimony and record evidence, the undersigned finds genuine issues of material fact with respect to whether the limitations suffered by Plaintiffs inure to Defendant's benefit. Simply put, this question of fact is appropriate for a jury.

*b. Are the breaks allotted for the purpose of eating a regularly scheduled meal?*

Plaintiffs argue that the breaks are not allotted for the purpose of eating a regularly-scheduled meal for two reasons. First, the breaks cannot be "regularly scheduled" because the nature of the job and the policy make it impossible for the employees to know, in advance, whether a meal period will apply. Second, Plaintiffs argue that there are no actual meal breaks, as evidenced by Plaintiffs' testimony and Defendant's lack of records. In support, Plaintiffs proffer testimony from Manuel Pagan, Defendant's Miami Site Manager, who stated that there is not a "regular schedule for the meal periods" and that "there is no way to know in advance whether there will be a meal period on any particular mission." (M. Pagan Dep. 16:13-15; 17:18-20). Moreover, Plaintiffs unequivocally testify that the meal breaks do not exist:

> Q: The time sheets reference a lunch break. Do you take a lunch break?
>
> A: No.
>
> Q: More generally speaking, do the ASOs take a lunch break?
>
> A: No.
>
> Q: Is there ever a time where you're told by a supervisor when your so-called lunch break starts or stops?
>
> A: No.
>
> Q: Is there ever any schedule for any so-called lunch break?
>
> A: No.
>
> Q: Is there ever a time when a supervisor says, Hey, Luis, you're on lunch break for the next hour?
>
> A. No.

(L. Pagan Dep. 51:5-21).

> Q: What about the automatic meal period deduction do you feel is improper?
>
> A: That we're not taking it. So we're not taking the hour lunch break that they said we're taking.

(Baker Dep. 18:24-19:3).

> Q: And what about that one-hour meal break?
>
> A: We are still on duty. And I feel it's illegal and the policy is incorrect, what Akal is doing.
>
> Q: Meaning that you're not being paid for that one-hour meal break?
>
> A: Correct, because we're not taking a meal break.

(Gelber Dep. 13:3-11).

By contrast, Defendant has presented evidence, mostly through its written policy, that

Plaintiffs knew about the meal break policy and agreed to comply with same. Upon receiving an offer of employment, Plaintiffs each received and signed an "Employee Offer Letter," setting forth the relevant policy. (Gunn Decl. ¶ 15). Then, Plaintiffs received and signed a second copy of the policy at the start of their employment. (Gunn Decl. ¶ 15). Defendant contends that, because Plaintiffs signed the policy, "it is undisputed that Plaintiffs knew about the policy and agreed not to perform work during unpaid meal periods as required by the policy." (ECF No. 116).

Again, the parties have presented "conflicting evidence requiring a credibility determination" as to the existence of the meal breaks. See Jarmon, 2010 WL 11507029, at *10. Viewing the facts in the light most favorable to each non-moving party, respectively, the undersigned finds that a reasonable jury could find in either party's favor. Thus, summary judgment is improper.

**Defendant's Motions for Partial Summary Judgment**

As an alternative to its motion for summary judgment on all counts of Plaintiffs' claim, Defendant moves for partial summary judgment on three issues: unpaid minimum wages, liquidated damages, and wilfulness.

*1. Unpaid Minimum Wages*

First, Defendant argues that summary judgment in its favor is appropriate as to Count I of Plaintiffs' Complaint for unpaid minimum wages because, although Plaintiffs are not compensated for the one-hour meal breaks, Plaintiffs' effective hourly rate nevertheless exceeds federal minimum wage requirements. Upon review, the undersigned agrees.

The FLSA establishes a minimum wage that employers must pay their employees for all hours worked. 29 U.S.C. § 206(a)(1). Though the Act expresses the minimum wage in terms of "an hour," case law has established that the relevant unit for evaluating minimum wage claims is the

effective hourly rate, which is calculated by "dividing the amount of compensation paid during a workweek by the total number of hours the employee worked during that workweek." Roop v. Wrecker and Storage of Brevard Inc., No. 6:12-cv-1387-Orl-31TBS, 2013 WL 5929032, at *4 (M.D. Fla. Nov. 1, 2013) (citing Walters v. American Couch Lines of Miami, Inc., 569 F.Supp.2d 1270, 1300 (S.D. Fla. 2008), aff'd, 575 F.3d 1221 (11th Cir. 2009)); see also, Del Rosario v. Labor Ready Southeast, Inc.,124 F. Supp.3d 1300, 1310 (S.D. Fla. 2015). "In other words, it is the workweek as a whole rather than each individual hour within a workweek" that is used to determine FLSA compliance. Walters, 569 F.Supp.2d at 1300.

In Roop, for example, the employee argued he was entitled to federal minimum wage "on the theory that some of the hours he worked for [his employer] were entirely uncompensated, [and] thus, for those specific hours, [he] was not paid a minimum wage." 2013 WL 5929032, at *1. In sum, the employee alleged that his employer violated minimum wage laws because he was "not compensated at a minimum wage for *each* hour worked." Id. at *4 (emphasis in original). Despite Plaintiffs' contentions, the court "decline[d] to adopt the hour-by-hour minimum wage analysis." Id. Instead, it granted summary judgment in favor of the employer, finding that the effective hourly rate–the average rate over the workweek–was the applicable unit for evaluating minimum wage claims. Id.

The undersigned notes that the facts here are virtually indistinguishable from those in Roop. In the present case, Plaintiffs claim they are entitled to minimum wages for the hour-long meal periods for which they were not compensated. In response, Defendant proffers the effective hourly rate theory. Importantly, Plaintiffs' initial hourly rate was $25.15, which was increased to $25.58 in April 2016. (Gunn Decl. ¶ 22). Assuming, *arguendo*, that the hour deducted for meal periods should

be included in Plaintiffs' "hours worked," the lowest effective hourly rate received by any Plaintiff during any week was $21.97. (Gunn Decl. ¶¶ 22-25; ECF No. 118-7; ECF No. 118-8). Given that the federal minimum wage rate during the relevant time was $7.25, 29 U.S.C. § 206, the undersigned finds that Plaintiffs' claim for minimum wages fails as a matter of law.

   *2. Liquidated Damages*

Second, Defendant argues that the Court should bar Plaintiffs from recovering liquidated damages because, in creating and implementing the policy at issue, Defendant relied in good faith on the advice of counsel. Plaintiffs, however, contend that Defendant has not met its burden of proof for a good faith defense. The undersigned agrees.

Under the Portal-to-Portal Act, an employer in violation of the FLSA is liable for liquidated damages in an amount equal to the overtime pay due, unless the employer can prove that "the act or omission giving rise to the [violation] was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation." 29 U.S.C. § 260. This defense contains objective and subjective components. To satisfy the subjective component, the employer must prove that it "had an honest intention to ascertain what [the Act] requires and to act in accordance with it." Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1566 (11th Cir. 1991) (quoting Brock v. Shirk, 833 F.2d 1326, 1330 (9th Cir. 1987) (internal quotations omitted). The objective component requires the employer to show that it reasonably believed it did not act in violation of the Act. Id. "Absent a showing of both the subjective and objective elements of the good faith defense, liquidated damages are mandatory." Id.

Here, Defendant presents evidence that it relied on the advice of counsel in creating its written meal period policy. For example, Defendant provides email exchanges between itself and

counsel, which demonstrate that its attorney, John Ferguson, examined and edited the policies. In the final email, dated Wednesday, April 2, 2014, Ferguson writes to Defendant, "[a]s we discussed, attached are updated revised final versions of the proposed new Timekeeping Policy document for Leads and for Aviation Security Officers (redline and clean versions). . . Unless anyone has any further comments or changes, I think the attached documents are ready to go." (ECF No. 118-11). Moreover, Ferguson testified:

> Q: Did you advise Akal that Section 7 of this document was in compliance with the Fair Labor Standards Act?
>
> A: What we advised Akal of that, based on our review–and this is [my partner] and I–our review of the regulations, the DOL regulations on bona fide meal periods that–that this language, as long as the ASOs were–as stated in the policy, were completely relieved of duties, that this policy would be in compliance with the regulations.
>
> Q: And what regulation or regulations are you talking about?
>
> A: 29 C.F.R. 285–785.19.

(Ferguson Dep. 11:15-25).

However, Plaintiff contends–and provides evidence–that Defendant did not implement its written policy exactly as written. For example, Defendant concedes that the meal period is deducted from Plaintiffs time-sheets by a supervisor, after the flight concludes, and that the exact times of the breaks are unknown. This directly opposes the written policy on which Defendant contends it relied in good faith: the written policy provides that the *ASOs* will "sign in and out accurately and to-the-minute for unpaid breaks." Even assuming, *arguendo*, that Defendant established its good faith reliance on the creation of its written policy, it has not established an absence of material fact as to whether it reasonably believed it did not act in violation of the Act. Because it cannot establish either

the objective or subjective component of its good faith defense, the question of liquidated damages is for the jury.

 *3. Wilfulness*

Finally, Defendant contends that a two-year statute of limitations is appropriate, because Plaintiffs cannot prove that it acted with wilfulness or reckless disregard as to whether its meal period policy was statutorily prohibited. In response, Plaintiffs claim that Defendant's actions were wilful because it was previously sued for a "substantively identical" policy. (ECF No. 134). Moreover, Plaintiff argues that Defendant did not implement, in practice, the exact policy approved by counsel. Thus, Plaintiff contends that Defendant acted wilfully or with reckless disregard.

Nonetheless, the issue of willfulness is not yet ripe for consideration. "Before the Court may entertain the defense of 'good faith,' the jury must determine whether the defendants violated the FLSA and whether such violation was willful for purposes of determining whether the three year statute of limitations applies." Fuentes v. CAI International, Inc., 728 F.Supp. 2d 1347, 1360 (S.D. Fla. 2010) (citing Morrison v. Quality Transport Services, Inc., 474 F.Supp. 2d 1303, 1313 (S.D. Fla. 2007)). Thus, this issue presents questions of fact, which are appropriate for a jury. Id.

## Recommendation

With respect to Defendant's motion for partial summary judgment as to Count 1 of Plaintiffs' Amended complaint, the undersigned finds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. However, the undersigned notes that the parties' remaining claims involve questions of fact appropriate for a jury. Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that Defendant's Motion for Summary Judgment, (ECF No. 116), be **GRANTED-IN-PART** and **DENIED-IN-PART**, and Plaintiffs' Motion for Summary

Judgment, (ECF No. 119), be **DENIED**, consistent with the above.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with Judge Moreno within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this 8th day of August 2017.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**